## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| CAT IRON, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 10-CV-2102** |
| | ) | |
| BODINE ENVIRONMENTAL SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

Defendant, Bodine Environmental Services, Inc., filed this Amended Motion for Summary Judgment (#23) on February 24, 2011.  Plaintiff, Cat Iron, Inc., filed their Response (#25) on March 31, 2011, and Defendant filed its Reply (#26) on April 14, 2011.  The motion is now fully briefed and ready for judgment.  For the following reasons, Defendant's Amended Motion for Summary Judgment (#23) is DENIED in part, with ruling reserved on another part.

BACKGROUND

Plaintiff filed its Amended Complaint (#11) on August 4, 2010.  In the Amended Complaint, Plaintiff alleged the following:

Plaintiff and Defendant entered into a contract whereby Defendant would inspect one of Plaintiff's facilities for asbestos and issue a written report to Plaintiff.  Defendant, an Illinois corporation, submitted a proposal for a complete National Emission Standards for Hazardous Air Pollutants (NESHAPS) asbestos inspection and comprehensive report of the findings of the inspection of the Intermet Facility in Decatur, Illinois, with the cost not to exceed $6,100.00.  On

-1-

May 30, 2008, Robb Davis, Plaintiff's co-owner, on behalf of Plaintiff, a Pennsylvania corporation, accepted and signed the proposal. On July 7, 2008, Defendant sent its asbestos inspection report to Plaintiff and billed Plaintiff for the asbestos inspection, sampling, and written report. Plaintiff alleges that Defendant failed to identify several asbestos containing materials at the Decatur facility. Plaintiff alleges Defendant failed to fully perform its part of the contract made on May 30, 2008, with Plaintiff. Plaintiff alleges damages in excess of $75,000 on each of the four counts contained in its First Amended Complaint: (1) breach of contract; (2) breach of express warranty; (3) negligence (and in the alternative Plaintiff plead that Defendant was guilty of willful and wanton acts or omissions, such as intentionally or with conscious disregard failing to identify several asbestos containing materials); and (4) negligent misrepresentation.

Defendant filed its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's First Amended Complaint (#15) on August 18, 2010. Defendant plead three affirmative defenses: (1) any damages Plaintiff can recover are limited by the limitation of liability clause set forth in the parties' contract attached to the Amended Complaint; (2) under the parties' contract, the Plaintiff discharged and released Defendant from any damage in excess of Defendant's compensation for the work ($6,100 under the contract, although Defendant was only paid $6,080 by Plaintiff); and (3) the district court lacks subject matter jurisdiction because the parties' contract limits the Plaintiff's damages to an amount below the amount in controversy requirement for diversity jurisdiction.

Item 5 of the Standard Terms and Conditions in the parties' contract states:

"**Item 5. Limitations of Liability.** The CLIENT [Plaintiff Cat Iron, Inc.] agrees to limit Bodine's liability to the CLIENT and all parties claiming through the client or otherwise claiming reliance on Bodine's services, allegedly arising from

Bodine's professional acts or errors or omissions, to a sum not to exceed Bodine's fees for the services performed on the project, provided that such claims are not attributable to Bodine's gross negligence or intentional misconduct. In this latter event, the limit of liability will be increased to $25,000 less any applicable insurance amount covering alleged damages or claims. In no event shall Bodine or any other party to this agreement, including parties which may have claim to have a direct or indirect reliance on Bodine's services, be liable to the other parties for incidental, indirect or consequential damages arising from any cause."

On October 5, 2010, during discovery in this case, Defendant served upon Plaintiff a Federal Rule of Civil Procedure 30(b)(6) Notice of Deposition (attached as Exhibit D to Defendant's Amended Motion for Summary Judgment (#23)), requesting that Plaintiff:

"designate and produce one or more officers, directors, managing agents, or other persons knowledgeable to testify in detail with respect to the following matters:

1.    All facts upon which Cat Iron bases its allegation that Bodine Environmental Services, Inc., engaged in willful and wanton misconduct in allegedly failing to identify or report certain-asbestos-containing materials as alleged in Count III of the First Amended Complaint.

2.    The nature, duration, and scope of Cat Iron's investigation in obtaining the facts to support its allegation that Bodine Environmental engaged in any willful and wanton misconduct while working on the Intermet project, which is the subject matter of the First Amended Complaint."

Plaintiff's co-owner Robb Davis was produced pursuant to the Rule 30(b)(6) Notice by

Plaintiff. No other person was produced by Plaintiff pursuant to the Rule 30(b)(6) Notice. Davis's deposition was taken on January 18, 2011. During the deposition, Defendant's counsel repeatedly asked Davis what facts Plaintiff had to support its allegations that Defendant engaged in willful and wanton misconduct. Each time Plaintiff's counsel objected during the deposition. The answers provided by Davis, subject to Plaintiff's counsel's objections, time and again, stated that Davis was not aware of any facts that supported Plaintiff's claim that Defendant's actions were willful and wanton. Davis said he did not have any facts that Defendant acted with conscious disregard for Plaintiff's business plans with regard to the Decatur facility. Davis also stated that Plaintiff does not know what Defendant's motives "were or were not" in doing the inspection. Further, Davis and Plaintiff did not have any facts in its possession to show that Defendant acted intentionally or with reckless disregard in failing to allegedly identify all of the asbestos containing material at the Decatur building.

When he was examined by Plaintiff's counsel, Davis testified that he had no legal training, could not give a definition of "willful and wanton misconduct," and could not identify "what fact may or may not tend to prove or disprove somebody's willful and wanton misconduct." Davis stated that he became aware asbestos was still in the building after Defendant had performed its inspection and removal when David Stowers of Parkland Environmental pointed out additional remaining asbestos to Davis. Davis stated the remaining asbestos was easy to see.

ANALYSIS

<u>Defendant's Amended Motion for Summary Judgment (#23)</u>

Defendant's Amended Motion for Summary Judgment seeks judgment on three grounds: (1) Plaintiff, through Davis's deposition testimony, admits it has no facts to support wanton and willful

misconduct on Defendant's part, thus limiting Plaintiff to the $6,100 damages limitation of their original contract, which would deprive this court of jurisdiction; (2) Plaintiff's claim is for commercial losses only, not threats to health or safety, thus defeating any claim for wanton or willful misconduct; and (3) the economic loss doctrine bars Plaintiff's negligence claim. Plaintiff disputes all these grounds in its Response. Plaintiff also argues, albeit an argument not fully developed, that Defendant's exculpatory damages limitations clause violates public policy.

<u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56 a district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. <u>Waldridge v. Am. Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Burwell v. Pekin Cmty. High Sch. Dist. 303</u>, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. <u>See</u> <u>Burwell</u>, 213 F. Supp. 2d at 929, <u>citing</u> <u>Chmiel v. JC Penney Life Ins. Co.</u>, 158 F.3d 966, 968 (7th Cir. 1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." <u>Butts v. Aurora Health Care, Inc.</u>, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence

it has that would convince a trier of fact to accept its version of events." <u>Koszola v. Bd. of Educ.</u> <u>of City of Chicago</u>, 385 F.3d 1104, 1111 (7th Cir. 2004). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." <u>Kampmier v. Emeritus Corp.</u>, 472 F.3d 930, 936 (7th Cir. 2007), <u>citing</u> <u>Celotex Corp.</u>, 477 U.S. at 322-23. "Conclusory allegations not supported by the record are not enough to withstand summary judgment." <u>Basith v. Cook County</u>, 241 F.3d 919, 928 (7th Cir. 2001).

I.    <u>Does the Exculpatory Clause at Issue Violate Public Policy?</u>

As a preliminary matter, it must be determined if the exculpatory clause contained in the contract violates public policy. Both parties agreed in the contract that its interpretation would be governed by the laws of the State of Illinois, so Illinois case law will govern the court's analysis in determining whether the damages limitation clause is valid.[1] Illinois public policy strongly favors the freedom to contract. <u>Harris v. Walker</u>, 519 N.E.2d 917, 919 (Ill. 1998). Illinois Supreme Court decisions "have consistently reflected a judicial concern with balancing the need to respect the right to freely contract with the need to protect parties from unfair provisions in contracts involving publicly regulated activities." <u>McClure Engineering Associates, Inc. v. Reuben H. Donnelly Corp.</u>, 447 N.E.2d 400, 402 (Ill. 1983). "However, in the nonregulated areas the decisions" of the Illinois Supreme Court "and those of other jurisdictions reflect a widespread policy of permitting competent parties to contractually allocate business risks as they see fit." <u>McClure</u>, 447 N.E.2d at 402-03. Courts in Illinois generally do not interfere with contracts to which parties have agreed unless there

---

[1]The last paragraph of the contract states "This Agreement shall be construed, interpreted, and governed by the laws of the State of Illinois."

is a defect in negotiations, such as disparity in bargaining power, absence of meaningful choice on the part of one party, and the existence of fraud, duress, or mistake.  Dana Point Condominium Association, Inc. v. Keystone Services Co., 491 N.E.2d 63, 66 (Ill. App. Ct. 1986).  Absent those defects, courts will generally enforce a contract as written.  Dana Point, 491 N.E.2d at 66.

"Barring fraud or wanton or wanton and willful negligence" exculpatory clauses are "valid and enforceable 'unless: (1) there is substantial disparity in the bargaining position of the two parties; (2) to uphold the exculpatory clause would be violative of the public policy; or (3) there is something in the social relationship between the two parties that would militate against upholding the clause." Oelze v. Score Sports Venture, LLC, 927 N.E.2d 137, 144 (Ill. App. Ct. 2010), quoting Garrison v. Combined Fitness Center, Ltd., 559 N.E.2d 187, 189-90 (Ill. App. Ct. 1990).  See also Masciola v. Chicago Metropolitan Ski Counsel, 628 N.E.2d 1067, 1071 (Ill. App. Ct. 1993) ("Exculpatory clauses will be upheld in the absence of fraud; willful and wanton conduct; legislation to the contrary; where the exculpatory clause is not contrary to the settled public policy of this State; where there is no substantial disparity in the bargaining position of the parties; and where there is nothing in the social relationship of the parties which militates against upholding the agreement.").

Plaintiff argues damages cannot be limited by the exculpatory clause because it would violate public policy, since both Illinois and federal law have expressed interest in asbestos related matters, especially the demolition of asbestos laden buildings.  See 225 Ill. Comp. Stat. 207/5 et seq. (West

2008); 415 Ill. Comp. Stat. 5/9.13 (West 2008); 40 C.F.R. 61.145(b).[2] In the Illinois Supreme Court decision Board of Education of City of Chicago v. A, C, and S, Inc., et al., 546 N.E.2d 580 (Ill. 1989) the court considered various tort claims by school districts against defendants who were involved in the manufacture and distribution of asbestos-containing material in the schools. Clearly, Illinois, and the federal government, have taken an interest in the removal of asbestos and made it a part of public policy to identify and remove asbestos in the safest way possible. What is not clear from the law cited by Plaintiff, however, is that a contract between two sophisticated corporate entities to remove asbestos from a structure that contains a damages limitations clause violates settled public policy in Illinois. See Tyler Enterprises of Elwood, Inc. v. Skiver, 633 N.E.2d 1331, 1337 (Ill. App. Ct. 1994) ("The general rule regarding exculpatory clauses in Illinois is that such clauses will be enforced unless (1) it would be against the settled public policy of the state to do so..."). Plaintiff has not specifically cited to an Illinois statute or case prohibiting a damages limitation provision in a contract relating to asbestos removal. This court must follow established Illinois law, and will not fashion such a rule in federal court for the first time.

II. Do the Economic Loss Doctrine and Commercial Losses Doctrine Bar Plaintiff's Claim?

Defendant makes two arguments in connection with the type of loss suffered by Plaintiff: (1) the Illinois economic loss doctrine bars the negligence claim because Plaintiff cannot recover for purely economic loss under a tort theory; and (2) because Plaintiff seeks only commercial losses, his claim of wanton and willful conduct cannot stand, since wanton and willful conduct necessarily

---

[2]The Illinois statutes in question deal with licensing contractors to deal with asbestos identification and removal from buildings and filing fees to be paid to the state for asbestos removal. The federal regulation concerns the notification requirements applicable to those seeking to demolish asbestos laden structures.

contemplates a threat to health or safety, which Plaintiff does not claim.

A.  Moorman (Economic Loss) Doctrine

Defendant cites to the Illinois Moorman Doctrine, which holds that purely economic losses are generally not recoverable in tort actions but for three exceptions: (1) where the plaintiff has sustained damage resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud); and (3) where the plaintiff's damages are a proximate result of negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. In re Bell Switching Station Litigation, 641 N.E.2d 440, 444 (Ill. 1994), citing Moorman Manufactuing Co. v. National Tank Co., 435 N.E.2d 443, 450-52 (Ill. 1982).

Here, Plaintiff did allege negligent misrepresentation, which would appear to bar application of the Illinois economic loss doctrine.  See Moorman, 435 N.E.2d at 452.  However, as observed by Defendant in its Amended Motion for Summary Judgment, the only claim keeping this case in federal court is Plaintiff's Count III negligence claim asserting willful and wanton conduct on the part of Defendant.  Under Illinois law, exculpatory clauses are generally valid and enforceable, "barring fraud or wanton and willful negligence." Oelze, 927 N.E.2d at 144.  Therefore, if Plaintiff cannot show a genuine issue of material fact as to the wanton and willful negligence claim in Count III, those claims will be dismissed, the damages limitation clause will apply, limiting Plaintiff's damages to $6,100, and the case will be dismissed for lack of federal subject matter jurisdiction. Thus, the court will only consider the economic loss doctrine's application to the Count III negligence wanton and willful claim.

It is not clear from Illinois law that the economic loss doctrine is applicable in cases relating

to asbestos removal.  In the <u>Board of Education</u> case cited above, the trial court declined to apply the economic loss doctrine of <u>Moorman</u> to strict liability and negligence claims about asbestos because the critical inquiry was whether the product (asbestos) had an unreasonably dangerous defect and whether the defect caused the alleged property damage.  The court ruled that to prevent recovery in tort merely because the physical harm did not occur suddenly would defeat the underlying purpose of strict products liability.  <u>Board of Education</u>, 546 N.E.2d at 590.  The court wrote that "[t]he nature and defect in these [asbestos-containing materials] is the asbestos fibers, which are toxic and which, it has been determined, may, in certain circumstances, be harmful." <u>Board of Education</u>, 546 N.E.2d at 588.

Here, this court will not apply the economic loss doctrine if Defendant is found to have been negligent in a wanton and willful manner.  Asbestos, by its very nature, implicates harmful health and safety issues.  See <u>Board of Education</u>, 546 N.E.2d at 588.  It is true, as claimed by Defendant, that the Illinois Supreme Court in <u>Board of Education</u> wrote that "the holding in this case should not be construed as an invitation to bring economic loss contract actions within the sphere of tort law through the use of some fictional property damage."  <u>Board of Education</u>, 546 N.E.2d at 588. However, it is not clear that the court was referring to asbestos cases.  Rather, it appears the court was referring to tort actions in general that would otherwise be barred by the economic loss doctrine. The court went out of its way in <u>Board of Education</u> to note the uniquely dangerous nature of asbestos and the special problems it posed.

B.  Commercial Losses

For the same reasons articulated above on why the court will not apply the economic loss doctrine, the court will not grant judgment on the wanton and willful claim because Plaintiff cited

to only commercial losses.  Again, the Illinois Supreme Court has held that asbestos, by its very nature, is a uniquely dangerous substance.  Implicit in cases involving asbestos removal is a threat to health and safety.  The court will not grant judgment on the wanton and willful claim on the issue of commercial losses.

This does not mean, however, that because this court declines to apply the economic loss doctrine and declines to find that Plaintiff alleged only commercial losses in its wanton and willful negligence claim that the damages limitation clause is vitiated.  The damages limitation clause will apply and thus deprive this court of subject matter jurisdiction unless Plaintiff can show a genuine issue of material fact exists as to whether Defendant's actions or omissions constituted negligence in a wanton and willful manner.

III.     Does Plaintiff Have Facts to Support a Claim of Willful and Wanton Misconduct

Defendant argues that, since Plaintiff's Rule 30(b)(6) representative stated, under oath, that Plaintiff had no facts to support those allegations, it cannot sustain a claim for the alleged conduct. Plaintiff counters that the evidence from the deposition is not admissible because defense counsel's questions to Davis elicited "opinions phrased in terms of inadequately explored legal criteria."  To answer the questions, Plaintiff argues, Davis had to form a legal opinion on the topic of willful and wanton misconduct and then make legal conclusions based on his own definition instead of basing it on clearly defined legal criteria.  Without this evidence, Plaintiff argues, Defendant's motion must be denied.

Rule 30(b)(6) of the Federal Rules of Civil Procedure states:

"**Notice or Subpoena Directed to an Organization.**  In its notice or subpoena, a party may name as the deponent a public or private corporation, a

partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules." Fed. R. Civ. P. 30(b)(6).

Federal Rule of Evidence 704(a) states:

"Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." F.R.E. 704(a).

The designated 30(b)(6) deponent cannot be asked to offer legal conclusions or to testify to subjects outside of the scope of the Rule 30(b)(6) notice. Bilek v. American Home Mortgage Servicing, 2010 WL 3187648 (N.D. Ill. 2010), at *2.

The only case cited by the parties is Hasse Construction Co., Inc. v. Gary Sanitation District Board of Commissioners, 2009 WL 362293 (N.D. Ind. 2009). In that case, Hasse filed a complaint against Gary Sanitation District (GSD) alleging breach of contract and unjust enrichment. Hasse claimed it entered into a contract with GSD to reconstruct/rehabilitate sewers in Gary, Indiana, and that GSD failed to disclose underground utility facilities that interfered with Hasse's work by slowing progress and increasing costs. GSD later sued third-party defendants White River

Environmental Partnership (WREP) alleging negligence and breach of contract for negligently and/or wantonly and willfully failing to inspect and oversee progress and construction in the sewers. WREP took a Rule 30(b)(6) deposition of GSD representative, Jay Niec, to discover the basis for the district's breach of contract claims. GSD argued WREP failed to oversee Hasse during construction and failed to provide the services required by their contract.

During his testimony, "Niec testified that, generally, he believed that the Third-Party Defendants failed to inspect and oversee Hasse, he further stated that there were no facts supporting that the alleged failure to inspect and oversee was willful on their part." Hasse, 2009 WL 362293, at *8. The magistrate judge found GSD failed to present any evidence contradicting Niec's testimony that GSD had no facts supporting its allegation that the failure to inspect and oversee was willful and wanton. The magistrate concluded that, "[g]iven that GSD's Amended Third-Party Complaint alleges that the Third-Party Defendants negligently and/or willfully and wantonly failed to properly inspect or oversee Hasse, and no facts support a willful (and wanton) alleged failure, the only possibility remaining is that the alleged failure was done negligently." Hasse, 2009 WL 362293, at *8. Since all negligence claims against the third-party defendants had been dismissed with prejudice pursuant to a prior court order, there was no genuine issue of material fact existing as to whether the third-party defendants failed to inspect or supervise/oversee Hasse. The magistrate judge's opinion does not detail specifically what questions were asked of Niec, nor does it indicate whether any objections were made to questions asked in the deposition.

However, in another case decided by a magistrate judge, this time in California, the court rejected a plaintiff's motion to compel designation of witnesses pursuant to Rule 30(b)(6) where the plaintiff sought testimony regarding defendant's legal conclusions. Lenz v. Universal Music Corp.,

2010 WL 1610074 (N.D. Cal. 2010). In that case, the plaintiff, in their Rule 30(b)(6) notice, sought "testimony regarding 'the basis for any belief by Universal that Ms. Lenz's video infringes the copyright in 'Let's Go Crazy,' including the basis for any belief by Universal that Ms. Lenz's video is not a fair use of 'Let's Go Crazy.'" <u>Lenz</u>, 2010 WL 1610074, at *2. In response, the defendant argued that the topic was improper because it asked the party to produce a witness about legal conclusions. The magistrate judge agreed, writing:

> "Plaintiff is asking for testimony that forms the basis of defendant's 'belief' regarding infringement and fair use. The facts that form those 'beliefs' are legal conclusions and an improper topic for a Rule 30(b)(6) deposition." <u>Lenz</u>, 2010 WL 1610074, at *3.

In <u>First Internet Bank of Indiana v. Lawyers Title Insurance Co.</u>, 2009 WL 2092782 (S.D. Ind. 2009), the defendant Lawyers argued that plaintiff First Internet should be precluded from arguing a breach of contract claim because of statements made by First Internet's corporate designee during a Rule 30(b)(6) deposition. The deponent testified that First Internet had no evidence to support any of its causes of action and he advanced a theory of contract damages that was different from the theory First Internet advanced in its motion for summary judgment. Lawyers argued that First Internet's Rule 30(b)(6) deponent bound First Internet and prevented it from taking a different position at the summary judgment stage or trial.

Judge David Hamilton rejected this particular argument of Lawyers's. The court noted that Rule 30(b)(6) is intended to help a party seeking discovery from an institution to avoid "a slow and expensive game of internal finger pointing as one deponent after another says that he or she is not the person who knows the answer to the question." <u>First Internet</u>, 2009 WL 2092782, at *4. While

Rule 30(b)(6) is not perfect, it can be effective if the parties use it in good faith. The defendant, Lawyers, however, tried use 30(b)(6) in a "very different way, by asking about legal theories and fact supporting the allegations in the complaint." Judge Hamilton believed Lawyers was trying to use the rule as a contention interrogatory early in the litigation before First Internet had time to complete its own discovery and fully develop its legal theory, so as to bind First Internet to the first incomplete answers it provided. Judge Hamilton wrote:

> "This tactic has little to recommend it as a method for trying to lock an opponent into flawed and incomplete contentions and legal theories. A Rule 30(b)(6) deposition produces evidence, not judicial admissions. A Rule 30(b)(6) deponent testifies as if she is the corporation, but Rule 30(b)(6) does not 'absolutely bind a corporate party to its designee's recollection.'" First Internet, 2009 WL 2092782, at *4, quoting A.I. Credit Corp. v. Legion Insurance Co., 265 F.3d 630, 637 (7th Cir. 2001).

While Rule 30(b)(6) testimony can be contradicted and used for impeachment purposes, it is not a judicial admission that ultimately decides an issue, therefore the court concluded that Lawyers could not preclude First Internet from arguing breach of contract by noticing the deposition at an early stage of the litigation. First Internet, 2009 WL 2092782, at *4. See also AstenJohnson, Inc. v. Columbia Casualty Co., 562 F.3d 213, 229, n. 9 (3rd Cir. 2009) (corporate designee's statements offering his own interpretation of a contract were legal conclusions, as opposed to factual statements, not binding on corporation and corporation can introduce opposing evidence at trial); Remediation Products, Inc. v. Adventus Americas, Inc., 2009 WL 4612290, at *4 (W.D. N.C. 2009) ("If a party states it has no knowledge or position as to a set of alleged facts or area of inquiry

at a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change."); <u>Byrd v. Wal-Mart Transportation, LLC</u>, 2009 WL 3055303, at *4, n. 7 (S.D. Ga. 2009) ("While 'contention questions' are not per se impermissible during a Rule 30(b)(6) deposition, courts restrict them to written interrogatories where it is more efficient to do so, and asking a lay 30(b)(6) witness to undertake on-the-spot legal analysis in order to respond to contention questions is asking too much, especially since the company's lawyer is far better equipped to formulate full and complete responses for his client to sign.").

In the instant case, Plaintiff was clearly provided notice by Defendant of what was expected of Plaintiff's Rule 30(b)(6) deponent witness. The Notice informed Plaintiff that Defendant sought a deponent who could testify as to "all facts" upon which Plaintiff based its allegation that Defendant acted in a "wanton and willful" way in failing to identify or report certain asbestos containing materials. Further, while it is true that Davis, Plaintiff's co-owner and the Rule 30(b)(6) designee was not a lawyer, the term "wanton and willful" is not such a legal term of art that Davis could not understand what it meant or is in someway incomprehensible to a layperson, and at least one court has allowed Rule 30(b)(6) designees to testify as to what facts supported a claim of wanton and willful misconduct. See <u>Hasse</u>, 2009 WL 362293, at *8. Therefore, the court will allow in as evidence in the motion for summary judgment, over the objection of Plaintiff's counsel, the testimony given at the Rule 30(b)(6) deposition that Davis has no knowledge of any facts to support Plaintiff's claim of wanton and willful misconduct. However, the court does not find that this testimony necessarily results in judgment for Defendant on Plaintiff's claim of wanton and willful misconduct. Rule 30(b)(6) testimony can be used as evidence, but not a judicial admission that

ultimately decides an issue, and the court will not hold Plaintiff as absolutely bound to the designee's recollection. See First Internet, 2009 WL 2092782, at *4. The court will consider Davis's statements in support of Defendant's motion for summary judgment, but allow Plaintiff to rebut those statements with competent evidence.

The court notes that the parties have not argued what other evidence exists in connection with wanton and willful misconduct on Defendant's part. In their briefs, the parties focused only on (1) whether to exclude Davis's statements and (2) whether Davis's statements constitute a binding judicial admission so as to defeat Plaintiff's wanton and willful claim. If the wanton and willful claim is thrown out, the case cannot reach the $75,000 amount in controversy necessary to trigger federal subject matter jurisdiction. Therefore, the parties are instructed to file supplemental briefs on the issue of whether there is a question of material fact as to the Defendant's acting in a wanton and willful manner. Plaintiff must make a sufficient showing of evidence for either wanton and willful misconduct to show a genuine issue of material fact, since conclusory allegations not supported by the record will not withstand summary judgment. Kampmier, 472 F.3d at 936; Basith, 241 F.3d at 928.

IT IS THEREFORE ORDERED:

(1) Defendant's Amended Motion for Summary Judgment is DENIED in part. It is denied as to the application of the economic loss (Moorman) doctrine and commercial losses argument. The damages limitation clause, however, is not violative of settled Illinois public policy.

(2) Ruling is reserved on whether a genuine issue of material fact exists as to wanton and willful negligence on Defendant's part. If it is shown that a genuine issue of material is present, the damages limitation clause is void, pursuant to Illinois law, and the case may continue. If no genuine

issue of material fact exists, the limitations clause applies, limiting damages to $6,100, and this court will be deprived of subject matter jurisdiction.

(3) The parties are instructed to file supplemental briefs on this issue: Defendant's brief is due by Monday, June 27, 2011. Plaintiff's response is due by Monday, July 11, 2011. If Defendant wishes, it may file a Reply by Monday, July 18, 2011.

ENTERED this __15th__ day of June, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE