UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CAT IRON, INC., ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 10-CV-02102 |
| ) | |
| BODINE ENVIRONMENTAL ) | |
| SERVICES, INC., ) | |
| ) | |
|     **Defendant.** ) | |

**OPINION**

Defendant, Bodine Environmental Services, Inc., filed an Amended Motion for Summary Judgment (#23) on February 24, 2011. After the Defendant's Motion for Summary Judgment was fully briefed by both parties, this Court denied the Motion for Summary Judgment in part and reserved ruling on the issue of willful and wanton negligence. This court instructed both parties to file supplemental briefs solely on the issue of willful and wanton negligence. Defendant filed its Supplemental Brief (#28) on June 27, 2011. Plaintiff, Cat Iron, Inc., filed its Supplemental Brief (#37) on October 7, 2011. Defendant filed a Reply (#40) on October 14, 2011. For the following reasons, Defendant's Amended Motion for Summary Judgment (#23) with regards to the willful and wanton negligence claim is GRANTED.

**FACTS**

Plaintiff and Defendant entered into a contract whereby Defendant would inspect the Plaintiff's Internet Facility in Decatur, Illinois, for asbestos containing materials ("ACMs") and issue a written report to the Plaintiff. Defendant, an Illinois corporation, submitted a proposal for a complete National Emission Standards for Hazardous Air Pollutants (NESHAPS) asbestos

inspection and a comprehensive report of the findings of the inspection of the Intermet Facility with the cost not to exceed $6,100. On May 30, 2008, Robb Davis ("Davis"), Plaintiff's co-owner, on behalf of Plaintiff, a Pennsylvania corporation, accepted and signed the proposal. Item 5 of the Standard Terms and Conditions in the parties' contract states:

> **Item 5. Limitations of Liability.** The CLIENT [Plaintiff Cat Iron, Inc.] agrees to limit Bodine's liability to the CLIENT and all parties claiming through the client or otherwise claiming reliance on Bodine's services, allegedly arising from Bodine's professional acts or errors or omissions, to a sum not to exceed Bodine's fees for the services performed on the project, provided that such claims are not attributable to Bodine's gross negligence or intentional misconduct. In this latter event, the limit of liability will be increased to $25,000 less any applicable insurance amount covering alleged damages or claims. In no event shall Bodine or any other party to this agreement, including parties which may have claim to have a direct or indirect reliance on Bodine's services, be liable to the other parties for incidental, indirect or consequential damages arising from any cause.

On July 7, 2008, Defendant sent its asbestos inspection report to Plaintiff and billed Plaintiff for the asbestos inspection, sampling, and written report. After Defendant's report was sent to the Plaintiff, Davis, who hired the Defendant on behalf of Plaintiff, with the assistance of David Stowers ("Stowers") of Parkland Environmental, discovered that there were additional ACMs at the Intermet Facility that were not specifically identified in the Defendant's report. The failure to identify these additional ACMs led to this lawsuit.

## PROCEDURAL BACKGROUND

### I. PLEADINGS

Plaintiff filed its Amended Complaint (#11) on August 4, 2010. In its Amended Complaint, Plaintiff alleged damages in excess of $75,000 on each of the four counts contained in its First Amended Complaint: (1) breach of contract; (2) breach of express warranty; (3) negligence (and in the alternative Plaintiff plead that Defendant was guilty of willful and wanton acts or omissions, such as intentionally or with conscious disregard failing to identify several

2

ACMs); and (4) negligent misrepresentation.  Defendant filed its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's First Amended Complaint (#15) on August 18, 2010.  Defendant plead three affirmative defenses: (1) any damages Plaintiff can recover are limited by the limitation of liability clause set forth in the parties' contract; (2) under the parties' contract, the Plaintiff discharged and released Defendant from any damage in excess of Defendant's fees for the services performed, which was $6,080; and (3) the district court lacks subject matter jurisdiction because the parties' contract limits the Plaintiff's damages to an amount below the amount in controversy requirement for diversity jurisdiction.

## II.  RULE 30(b)(6) DEPOSITION

On October 5, 2010, during discovery in this case, Defendant served upon Plaintiff a Federal Rule of Civil Procedure 30(b)(6) Notice of Deposition, requesting that Plaintiff:

> [D]esignate and produce one or more officers, directors, managing agents, or other persons knowledgeable to testify in detail with respect to the following matters:
>
> (1) All facts upon which Cat Iron bases its allegation that Bodine Environmental Services, Inc., engaged in willful and wanton misconduct in allegedly failing to identify or report certain-asbestos-containing materials as alleged in Count III of the First Amended Complaint.
>
> (2) The nature, duration, and scope of Cat Iron's investigation in obtaining the facts to support its allegation that Bodine Environmental engaged in any willful and wanton misconduct while working on the Intermet project, which is the subject matter of the First Amended Complaint.

Davis was produced pursuant to the Rule 30(b)(6) Notice by Plaintiff.  No other person was produced by Plaintiff pursuant to the Rule 30(b)(6) Notice.  Davis's deposition was taken on January 18, 2011.  During the deposition, Defendant's counsel repeatedly asked Davis what facts Plaintiff had to support its allegations that Defendant engaged in willful and wanton misconduct. Each time Plaintiff's counsel objected during the deposition.  The answers provided by Davis,

subject to Plaintiff's counsel's objections, time and again, stated that Davis was not aware of any facts that supported Plaintiff's claim that Defendant's actions were willful and wanton. Davis said he did not have any facts that Defendant acted with conscious disregard for Plaintiff's business plans with regard to the Intermet Facility. Davis also stated that Plaintiff does not know what Defendant's motives "were or were not" in doing the inspection. Further, Davis did not have any facts in his possession to show that Defendant acted intentionally or with reckless disregard in failing to allegedly identify all of the ACMs at the Intermet Facility.

When he was examined by Plaintiff's counsel, Davis testified that he had no legal training, could not give a definition of "willful and wanton misconduct," and could not identify "what fact may or may not tend to prove or disprove somebody's willful and wanton misconduct." Davis stated that he became aware asbestos was still in the building after Defendant had performed its inspection and removal when Stowers of Parkland Environmental pointed out additional remaining asbestos to him.

### III.  MOTION FOR SUMMARY JUDGMENT

On February 24, 2011, Defendant filed an Amended Motion for Summary Judgment (#23). Defendant argued that summary judgment was appropriate under three separate grounds: (1) Plaintiff, through Davis's deposition testimony, admits it has no facts to support willful and wanton negligence on Defendant's part, thus limiting Plaintiff to the $6,080 damages limitation of the original contract, which would deprive this court of subject matter jurisdiction; (2) Plaintiff's claim is for commercial losses only, not threats to health or safety, thus defeating any claim for wanton or willful misconduct; and (3) the economic loss doctrine bars Plaintiff's negligence claim. In the Plaintiff's Response (#25), Plaintiff disputed each ground and also

argued that Defendant's exculpatory damages limitations clause violates public policy and therefore should not limit Plaintiff's recoverable damages.

On June 15, 2011, this court entered an Opinion (#27) making the following determinations: (1) the exculpatory damages limitations clause does not violate settled public policy in Illinois, therefore it is enforceable; (2) this court will not apply the economic loss doctrine if Defendant is found to have been negligent in a willful and wanton manner; (3) this court will not grant summary judgment on the willful and wanton negligence claim on the basis that Plaintiff's claim is for only commercial losses; (4) this court will allow as evidence in the motion for summary judgment the testimony given at the Rule 30(b)(6) deposition that Davis has no knowledge of any facts to support Plaintiff's claim of willful and wanton negligence; and (5) Plaintiff will not be bound to Davis' recollection—rather this court will consider Davis's statements in support of Defendant's motion for summary judgment, but will allow Plaintiff to rebut those statements with competent evidence.  Finally, this court reserved its ruling on the issue of willful and wanton negligence because the parties solely focused on the impact of the Rule 30(b)(6) deposition, rather than arguing whether there was a genuine issue of material fact as to the willful and wanton negligence claim.  This court then instructed the parties to file supplemental briefs solely focusing on the willful and wanton negligence claim.

IV.  SUPPLEMENTAL FILINGS ON WILLFUL AND WANTON NEGLIGENCE CLAIM

On June 27, 2011, Defendant filed its Supplemental Brief (#28) in Support of its Motion for Summary Judgment, as instructed by this court.  After confusion between the parties regarding discovery and the timing for filing Supplemental Briefs directed by this court, this court entered an Order (#36) on September 23, 2011, which clarified the deadlines for filing and

emphasized the need for the Plaintiff to explain, with sufficient evidential support, why there is a genuine issue of material fact as to the willful and wanton negligence claim.

On October 7, 2011, Plaintiff filed its Supplemental Brief (#37). In this Supplemental Brief, the Plaintiff included the following facts[1] to support the willful and wanton negligence claim: (1) Defendant failed to identify all ACMs located at the Intermet Facility; (2) some of the ACMs that were not identified by Defendant were easily identified by Stowers after he arrived at the facility to begin asbestos remediation; (3) the areas of asbestos found by Stowers, which included exterior walls and accessible rooftops, were large, visible and accessible; and (4) after Stowers pointed out what the ACMs looked like to Davis, Davis was personally able to identify similar ACMs at the Facility. Additionally, in Stowers' affidavit, he described the ACMs that he found as follows:

> There was well over 195,000 square feet of area containing ACMs that Bodine failed to identify and report . . . . The ACMs that Bodine failed to identify and include in its report were very easy to see and identify and the areas were easily accessible. Bodine should have found and identified the ACMs if it had done a proper inspection. For an experienced inspector to miss this many square fee of visible and accessible ACMs was either intentional or the inspector acted with incompetence, or with an extreme departure from the applicable standards. Richard Evey, the inspector from Bodine, told me he could not believe they missed this much. He admitted that Bodine screwed up.

Defendant filed a Reply (#40) on October 14, 2011, primarily arguing that Stowers' opinion as to the reason the ACMs were missed in Defendant's report is not evidence, and the admissible evidence falls well short of establishing a genuine issue of material fact on the willful and wanton negligence claim.

---

[1]Plaintiff's facts were supported by the following evidence: (1) an affidavit by David Stowers; (2) an affidavit by Robb Davis; (3) Defendant's proposal to identify the ACMs at the Intermet Facility; (4) Defendant's Report; and (5) pictures of the Intermet Facility.

6

## ANALYSIS

### I.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).  Speculation, however, is not the source of a reasonable inference.  See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).  Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004).  Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.  "Conclusory

allegations not supported by the record are not enough to withstand summary judgment." Basith v. Cook County, 241 F.3d 919, 928 (7th Cir. 2001). Additionally, "[s]tatements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact." Cleveland v. Porca Co., 38 F.3d 289, 295 (7th Cir. 1994).

The question of whether specific acts or omissions constitute willful and wanton conduct, or other similar claims involving questions of intent, ordinarily are questions of fact for the jury, however, there are cases in which it is appropriate to rule on the issue as a matter of law. See Prowell v. Loretto Hosp., 791 N.E.2d 1261, 1265 (Ill. App. 2003). Specifically, even when issues of intent are involved, summary judgment is appropriate if in response to a properly supported motion for summary judgment, the non-movant fails to offer specific facts to show that there is a genuine issue for trial. See Corrugated Paper Products, Inc. v. Longview Fibre Co., 868 F.2d 908, 914 (7th Cir. 1989) ("It is well-settled that summary judgment may be granted where the controlling issue is whether or not the movant acted with a particular mental state.").

## II.  WILLFUL AND WANTON CONDUCT

Under Illinois law, willful and wanton conduct is considered a hybrid between negligent and intentionally tortious behavior. See Ziarko v. Soo Line R.R. Co., 641 N.E.2d 402, 406 (Ill. 1994). The Illinois Supreme Court has explained that there are two types of willful and wanton conduct—intentional or reckless—which are distinguishable based on the mental state of the defendant. See Poole v. City of Rolling Meadows, 656 N.E.2d 768, 771 (Ill. 1995). First, intentional willful and wanton conduct occurs where the defendant's action or omission is undertaken with actual or deliberate intent to harm. Pfister v. Shusta, 657 N.E.2d 1013, 1016

(Ill. 2005). Alternatively, reckless willful and wanton conduct is defined as conduct that is committed with "utter indifference" to or "conscious disregard" for the property or safety of others. Id. This reckless conduct may be inferred in circumstances where the defendant fails, "after knowledge of impending danger, to exercise ordinary care to prevent it" or where the defendant fails "to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." American Nat. Bank & Trust Co. v. City of Chicago, 735 N.E.2d 551, 557 (Ill. 2000) (quoting Ziarko, 641 N.E.2d at 405). Additionally, Illinois case law indicates that the failure of a defendant to follow applicable guidelines or standard of care is sufficient for a fact-finder to find that the defendant's conduct is willful and wanton. See Henslee v. Provena Hosp., 369 F. Supp. 2d 970, 980 (N.D. Ill. 2005) (citations omitted). Nevertheless, admissible evidence on the standard of care, and more particularly, that there is a departure from the standard of care, is needed for this inference to be made. See, e.g., id. at 981; Am. Nat. Bank & Trust Co. v. City of Chicago, 735 N.E.2d 551, 557-58 (Ill. 2000).

Plaintiff has only offered limited evidence that is relevant to the claim that the Defendant's omission of ACMs from its report demonstrated willful and wanton negligence. As this court is required to construe the evidence in the light most favorable to the Plaintiff, this evidence offered will be assumed to be true in this opinion. The only admissible evidence that Plaintiff has offered demonstrates the following: (1) Defendant's report failed to identify over 195,000 square feet of area containing ACMs at the Internmet Facility; (2) these ACMs were very easy to see and identify, and were readily accessible to the Defendant; (3) Defendant did identify smaller, more obscure areas of ACMs than the portions missed; and (4) the Defendant's inspector admitted that Defendant "screwed up" and could not believe the amount of ACMs that

were missed in the report.  On the other hand, there were also statements which the Plaintiff attempts to rely upon which are not admissible as they are opinions—not facts.  Specifically, Plaintiff offered the speculation of a fact witness, Stowers, that for "an experienced inspector to miss this many square feet of visible and accessible ACMs was either intentional or the inspector acted with incompetence, or with an extreme departure from the applicable standards."  Stowers is not an expert, and even if he was, he failed to provide sufficient explanation of how he arrived at his opinion that Defendant acted intentionally, incompetently, or with an extreme departure from applicable standards.  Stowers did not explain what standards he was referring to and certainly did not list the specific standards that the Defendant failed to follow.  Therefore, Stowers' opinion will not be considered by this court, because it is an inadmissible, speculative opinion provided by a fact witness.  See Cleveland, 38 F.3d at 295 ("Statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact.").

      The only question for this court is whether Plaintiff has indeed introduced sufficient admissible evidence to create a genuine issue of material fact as to whether Defendant was willfully and wantonly negligent in completing its Report.  Plaintiff, instead of focusing on explaining how the evidence it offered creates a genuine issue of material fact on this issue, argued primarily that summary judgment is not appropriate on this claim because it involves a question of the Defendant's state of mind which is inappropriate for the court to determine at the summary judgment stage.  Despite the fact that Plaintiff states the general rule of law correctly, it is clear that in some cases, summary judgment is in fact appropriate, even if the state of mind of the defendant is at issue.  See Longview Fibre Co., 868 F.2d at 914.  This is one of those cases.  In this case, it is clear that the Plaintiff has failed to offer any admissible evidence supporting a

finding that Defendant was either <u>intentionally</u> or <u>recklessly</u> willfully and wantonly negligent. First, there clearly is no support for a finding that Defendant's omission of the ACMs from the Report was undertaken with an actual or deliberate intent to harm the Plaintiff. Although Plaintiff was given a chance to rebut the clear admission by Davis, Plaintiff's Rule 30(b)(6) designee, that he was unaware of any facts that would support a finding that Defendant intentionally failed to report the ACMs, Plaintiff failed to offer any such evidence.

With regards to the second type—<u>reckless</u> willful and wanton negligence—Plaintiff similarly has failed to offer any factual evidence that would support a finding that Defendant's omission of the ACMs from the Report was committed with utter indifference to or a conscious disregard for the safety of others. Although the Illinois Supreme Court allows a claim of reckless willful and wanton negligence to be satisfied by an inference in two particular situations, that inference is only permissible if there is evidence that the particular situation actually exists. Specifically, the evidence must support a finding that the circumstances were indicative that the defendant: (1) failed to exercise ordinary care to prevent impending danger after acquiring knowledge of the impending danger; or (2) failed to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. See <u>Ziarko</u>, 641 N.E.2d at 405.

In this case, the Plaintiff has not offered evidence that would support a conclusion that either of these two situations was present. First, there is no evidence that Defendant's conduct in completing the report demonstrates a failure to exercise ordinary care.[2] As to the second

---

[2]Although it is true that a departure from the applicable standard of care is sufficient for a fact-finder to find that the defendant's conduct is willful and wanton, Plaintiff offered no admissible evidence which either established the applicable standard of care or that Defendant's

possible situation where an inference is possible, there has been no evidence offered that demonstrates that Defendant was careless or reckless in preparing its report. Therefore, Plaintiff in essence asks that this court first infer that the Defendant's conduct deviated from the standard of care or was reckless or careless—based simply on the fact that a significant amount of ACMs that were easy to find were not included in Defendant's Report. This inference is not reasonable based on the facts offered by the Plaintiff in this case.[3] Only if this first inference was reasonable would Illinois case law support the additional inference that the omission was therefore the result of utter indifference to or a conscious disregard for the safety of others. In summary, Plaintiff has failed to show that a genuine issue of material fact exists as to willful and wanton negligence on Defendant's part, therefore summary judgment is granted in part with regards to Plaintiff's claim based on willful and wanton negligence.

### III. SUBJECT MATTER JURISDICTION

Because this court has found that summary judgment for the Defendant is appropriate on the willful and wanton negligence claim, the damages limitation clause remains valid and operates to limit the available damages in this case to $6,080. Although the amount in controversy at this point of the litigation fails to exceed $75,000, as required for federal diversity jurisdiction under 28 U.S.C. § 1332, this court disagrees with the Defendant that dismissal of this case is now mandated.[4] Supreme Court precedent makes two relevant rules of law clear: (1) the

---

conduct in completing its report deviated from the applicable standard of care.

[3] If this court would allow such an inference from facts devoid of any indication of willfulness, carelessness or deliberate intent to harm, any claim of simple negligence would also support a claim for willful and wanton negligence.

[4] This court previously indicated in its prior Opinion (#19) that "if Plaintiff cannot show a genuine issue of material fact as to the wanton and willful negligence claim in Count III, those

requirements for diversity jurisdiction must be satisfied only at the time the suit was filed; and (2) if the amount in controversy requirement is satisfied at the time the suit was filed, subsequent events that reduce the amount in controversy do not divest a federal court of subject matter jurisdiction.  See e.g., Rosado v. Wyman, 397 U.S. 397, 405 n.6 (1970); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-290 (1938).  Notwithstanding this precedent, the Seventh Circuit provides that, at least in the context of a Rule 12(b)(1) motion, a district judge has the discretion to dismiss a suit for lack of jurisdiction if it decides that a limitation of liability clause caps damages at an amount below the jurisdictional amount.  Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc., 60 F.3d 350, 353 (7th Cir. 1995) ("That leaves the question of timing: if it becomes clear some time into the litigation that the restriction [on damages] has teeth, should the judge limit damages via partial summary judgment or dismiss the suit for want of jurisdiction?  Here certainty fails, and the judge must exercise the informed discretion for which the masters of the craft are so valued.").  The Seventh Circuit also explains that the combination of a partial decision on the merits, such as granting partial summary judgment on a claim, with a jurisdictional dismissal is inappropriate.  Johnson v. Wattenbarger, 361 F.3d 991, 993 (7th Cir. 2004) ("By combining partial disposition of the merits with a dismissal of what remained, the district court either improperly entered a partial substantive judgment in a case over which it lacked jurisdiction, or improperly found that jurisdiction was missing.").

---

claims will be dismissed, the damages limitation clause will apply . . . and the case will be dismissed for lack of federal subject matter jurisdiction."  However, after further review of the applicable Seventh Circuit precedent, this court has determined that although dismissal might be appropriate in cases where the conclusion that a damages limitation clause applies is evident when the case is initially filed, pursuant to a Rule 12(b)(1) motion, this court does not believe dismissal is appropriate where the conclusion that a damages limitation clause applies requires extensive discovery and a partial summary judgment ruling by the court.

On September 28, 2010, this court, in its Opinion (#19) denying the Defendant's Motion for Dismissal for Lack of Jurisdiction, made a finding that at the time the suit was filed the jurisdictional requirements for diversity jurisdiction were satisfied. In the year since that holding, subsequent events—namely discovery by the parties and a motion for summary judgment—have resulting in a finding by this court that the damages limitation clause is valid due to an failure to create a genuine issue of material fact with regards to the claim for willful and wanton negligence. This court only has the power to make this determination if it has subject matter jurisdiction over the parties' case—which this court previously determined that it did. Until this determination on the validity of the willful and wanton claim was made by this court, the amount in controversy certainly exceeded $75,000. Therefore, this court declines the invitation by the Defendant to dismiss the remaining claims in Plaintiff's case.

## CONCLUSION

After granting partial summary judgment in favor of the Defendant on the willful and wanton negligence claim, the Plaintiff's remaining claims are as follows: (1) breach of contract; (2) breach of express warranty; (3) ordinary negligence; and (4) negligence misrepresentation. However, as determined by this court, any damages that Plaintiff may recover on these four remaining claims will be limited to a combined total of $6,080—the fees charged by the Defendant for the services performed at the Internet Facility—because of the impact of the limitation of liability clause contained in the contract entered into between the parties. Also, the Defendant's counterclaim against the Plaintiff for breach of contract, due to the alleged failure of Plaintiff to pay Defendant for services performed in the amount of $6,080, remains before this court.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Amended Motion for Summary Judgment (#23) is GRANTED in part, specifically on Plaintiff's claim of willful and wanton negligence.

(2) The parties are directed to contact Magistrate Judge David G. Bernthal's chambers to schedule a settlement conference.

(3) This matter is set for a status conference by telephone on January 5, 2012, at 9:00 a.m., before the undersigned to discuss the progress of the settlement conference between the parties.

ENTERED this __25th__ day of October, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE